COLBY (STURGES v.). See Case No. 13,-566.

COLBY (STURGIS v.). See Case No. 13,-574.

COLBY (UNITED STATES v.). See Case No. 14,830.

COLCHESTER (UNITED STATES v.). See Case No. 14,831.

## Case No. 2,970a.

In re COLCORD.

[2 Hask. 455.][1]

District Court, D. Maine.    Dec., 1880.

BANKRUPTCY—BOOKS OF ACCOUNT—SALE OF PARTNERSHIP ASSETS—BOOK ENTRIES.

1. The want of proper firm books of account will bar a partner in a firm of tradesmen of his discharge in bankruptcy.

2. The sale of firm assets to a new firm composed of the same members and one other, without any entry of the transaction upon the books of the old firm, is in violation of the law requiring tradesmen to keep proper books of account.

In bankruptcy. Petition by one member of a firm of tradesmen for his discharge. A firm creditor objected because the firm did not keep proper books of account.

F. S. Nickerson, for petitioner.

George F. Holmes and Almon A. Strout, for objecting creditor.

FOX, District Judge.    Cassius C. Roberts, one of this firm, having petitioned for his discharge, Loring B. Small, one of the firm creditors, has appeared in opposition thereto, on the ground that from Nov. 4, 1870, to April 15, 1871, the firm did not keep proper books of account. The firm failed in the fall of 1870, having before that been engaged in ship-building at Stockton, in this state, at the same time carrying on business as traders in their store at that place. About the time of the failure, they formed a new copartnership with one S. L. Hall, which car-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]
6 FED.CAS.—3

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

ried on the business of the store as before under the old style of Colcord, Berry & Co.

It is conceded that, up to the time of the failure, the firm complied with the requirements of the bankrupt act by keeping the proper books; but, after that time, they did not keep any cash book, nor did they enter on their journal, or any other book, the transfer of the stock to the new firm, or in any way refer thereto.

An examination of the books of the old firm nowhere discloses this transfer of the stock, or that anything was paid therefor by the new firm; the business was continued until February or March by the new firm, which made purchases of groceries from W. H. Kinsman, that, with most of the old stock, was disposed of to the men who were employed in finishing two vessels then on the stocks belonging to the old firm, but mortgaged to Kinsman. Some portion of the old stock was retailed by the new firm to other parties. When the workmen rendered in their accounts of their labor on the vessels, they were credited with the amounts on the books of the old firm, and were charged with the goods received by them in part payment from the new firm. A day book and ledger are the only account books shown to have been kept by the new firm; neither is produced, and the court is not advised as to the entries made thereon, and cannot presume that they fulfilled the requirements of the act in this behalf.

The amount of the goods turned over to the new firm by the old is stated by the bankrupt to have been about $2,000; the entire omission of any reference to this transaction on the books of the firm, and of any account with the new firm arising therefrom, in the opinion of the court, requires the refusal of the bankrupt's discharge. The books afford no information upon this subject to the assignees or creditors, either that there was a sale of the stock to the new firm, or what amount was paid therefor, or how much remained due and unpaid on this account when the firm went into bankruptcy; upon this whole proceeding, the books are silent.

Roberts testifies that when the new firm was formed, the old firm was deeply indebted to Hall, the incoming partner; that when the business of the new firm was wound up, the old firm had a settlement with the new and were still largely in debt to Hall. Of all this, so far as the court is informed, the books of the old firm make no disclosure, and there is nothing to be found therein which can in any way aid the assignees in determining for what sum the old stock was disposed of to the new firm, and how much has been paid, or to whom or what account.

This case, therefore, in this respect, is similar to that of In re Tyler [Case No. 14,305], and for this cause the court is compelled to deny the discharge.